Jason Hartley, CA Bar No. 192514
**STUEVE SIEGEL HANSON LLP**
500 West C Street, Suite 1750
San Diego, California 92101
Telephone: 619-400-5822
Facsimile: 619-400-5832
Email: hartley@stuevesiegel.com

George A. Hanson, *Admitted Pro Hac Vice*
J. Toji Calabro, CA Bar No. 239950
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile:  816-714-7101
Email:  calabro@stuevesiegel.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIENNE MERTENS, MICHAEL HENDERSON, CASEY MALTOS ROBERT DAVIS, COLE SNIDER, TERRY TEAGUE, MARTIN GOMEZ, JOHN MILLEMAN, WILLIAM URICH, PAUL VALENCIA, CHRIS STANFILL, ZACKERY LANGE, DALE MARTINEZ, KELVIN FORSTER, JONATHAN SPENCER, RANDEL PHILLIPS, VINCENT TORRIE, and DOUG BRIDGEFORTH, <br><br> Plaintiffs, <br><br>    v. <br><br> DIRECTV, LLC, <br><br> Defendant. | Case No. <br><br> COMPLAINT FOR DAMAGES |

1
COMPLAINT FOR DAMAGES

Plaintiffs, by and through their undersigned counsel, for their individual complaints against DIRECTV, LLC ("DIRECTV") hereby state as follows:

## NATURE OF SUIT

1. Plaintiffs are current and former employees of DIRECTV employed as satellite television installation and service technicians within an internal division called DIRECTV Home Services.

2. DIRECTV paid Plaintiffs on a piece-rate basis that does not properly compensate them for all of the hours they work.

3. Plaintiffs seek to recover unpaid wages and other applicable remedies under the Fair Labor Standards Act ("FLSA").

## PROCEDURAL HISTORY

4. Plaintiffs are all former party-plaintiffs in an FLSA collective action styled *Arnold v. DIRECTV*, Case No. 4:10cv-00352, pending in the Eastern District of Missouri.

5. After several years of litigation, on March 31, 2017, the *Arnold* court denied DIRECTV's motions for summary judgment, including on the question of whether the piece rate system DIRECTV used to pay its Home Services technicians complied with the FLSA (Doc. Nos. 472 and 473). That same day, the *Arnold* court also granted DIRECTV's motion for decertification of the FLSA collective action, finding that individual issues among the plaintiffs precluded continuing to trial on a representative basis (Doc. No. 474). The court tolled the statutes of limitations for 120 days to permit Plaintiffs to refile their claims individually.

## JURISDICTION, VENUE, AND JOINDER

6. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b). Thus, this Court has subject-matter jurisdiction over Plaintiffs' individual FLSA claims under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over DIRECTV because its principal place of business is in this district and because the causes of action asserted in this action arose out of DIRECTV's conduct in this district.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2). Venue is proper in this district for DIRECTV under 28 U.S.C. § 1391(c)(2) and (d) because DIRECTV is a resident of this district because it is subject to this Court's personal jurisdiction with respect to the civil action in question.

9. Joinder of the plaintiffs is proper because each of the Plaintiffs asserts a right to relief that arises out of the same series of transactions or occurrences and common questions of law and fact will arise in this action. Fed. R. Civ. P. 20.

## DEFENDANT DIRECTV

10. DIRECTV, LLC is a California limited liability company with its principal place of business in El Segundo, California. DIRECTV, LLC does business as DIRECTV Home Services. DIRECTV, LLC is a wholly-owned subsidiary of DIRECTV Group Holdings, LLC. That is, DIRECTV Group Holdings, LLC owns 100% of the membership interest in DIRECTV, LLC.

# FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS

## DIRECTV Did Not Pay Plaintiffs for All Hours Worked

11. Before DIRECTV converted all of its W-2 technicians to hourly employees, DIRECTV paid Plaintiffs using a piece-rate pay system. Under this system, DIRECTV paid Plaintiffs for completing certain enumerated "productive" tasks that DIRECTV had listed on a standardized rate card. Plaintiffs were not paid, however, for other indispensable tasks that are necessary to install and service DIRECTV satellite television service. Therefore, DIRECTV did not pay Plaintiffs for all of their hours worked.

12. DIRECTV paid Plaintiffs for completing specific line items listed on its work orders. These line items included payment for installing a standard, high definition, KaKu, or other satellite dish and one receiver. Plaintiffs were also paid for certain additional equipment that they installed in a customer's residence. Plaintiffs were paid a set amount for service calls and upgrades.

13. DIRECTV did not pay Plaintiffs for "non-productive" tasks, such as driving to and between job assignments, receiving and reviewing schedules, calling customers to confirm appointments, obtaining required supplies, assisting other technicians, waiting between jobs, waiting for customers, maintaining and organizing work vehicles, conducting inventory, and other indispensable tasks that are necessary to install and service DIRECTV satellite television systems.

14. DIRECTV did not pay Plaintiffs when a work order could not be closed, regardless of the reason or how much time Plaintiffs spend on the particular job. DIRECTV will not allow a work order to "close," and thus did not pay Plaintiffs for their work on the work order, in a variety of circumstances, including if a customer has

not paid a bill, if there is no line-of-sight from the customer's residence to DIRECTV's satellites, if the customer is not home, or if Plaintiffs are not able to get permission from the customer's landlord to mount a satellite dish.

15. The FLSA permits employers to pay employees on a piece-rate basis as long as the employer pays for all hours worked, including non-productive hours, and pays a premium for hours worked over forty in a week, based on the employee's regular rate. *See* 29 U.S.C. § 207; 29 C.F.R. §§ 778.111, 778.318.

16. An employer and employee may agree that the piece-rate pay compensates the employee for both productive and nonproductive hours, but the FLSA is not satisfied where the employer and employee do not make such an agreement. *See* 29 C.F.R. 778.318(c) (where it is "understood by the parties that other compensation received by the employee is intended to cover pay for such hours" . . . . "[I]f that is the agreement of the parties, the regular rate of the piece worker will be the rate determined by dividing the total piece work earnings by the total hours worked (productive and nonproductive) in the workweek.").

17. Plaintiffs and DIRECTV did not have an agreement or understanding that the pay Plaintiffs received for their productive tasks was also intended to compensate them for all the hours they spent working on nonproductive tasks. To the contrary, Plaintiffs understood that they would not be paid for performing a number of required tasks for DIRECTV. But such an agreement is not legal under the FLSA. *See* 29 C.F.R. § 778.318(a).

**Plaintiffs' Overtime Premiums Were Miscalculated**

18. Plaintiffs, in many workweeks, worked more than 40 hours per week for DIRECTV.

19. In addition to failing to pay Plaintiffs for many of the hours they work, DIRECTV also miscalculated Plaintiffs' regular rate of pay because DIRECTV did not pay Plaintiffs for all of the time they were working on DIRECTV's behalf. Plaintiffs' regular rate of pay was unlawfully diminished by dividing Plaintiffs' total pay by the sum of the number of hours Plaintiffs spent performing tasks that they were paid for *and* the number of hours they were not paid for. To comply with the FLSA, DIRECTV was required to calculate Plaintiffs' regular rate by dividing Plaintiffs' total pay by only the number of hours Plaintiff spent performing tasks that they were actually paid for.

**DIRECTV Willfully Failed to Keep Accurate Time Records and Encouraged Plaintiffs to Work Off-The-Clock**

20. The FLSA requires employers to maintain accurate time and other employment records related to their employees. DIRECTV willfully failed to maintain these records for Plaintiffs in order to save on payroll and other costs.

21. DIRECTV instituted policies and procedures to encourage, and sometimes require, Plaintiffs to inaccurately record the number of hours that they worked in a given week. For example, Plaintiffs were frequently required to write down on their time sheets that they took a break for lunch, regardless of whether Plaintiffs actually took an uninterrupted lunch break. DIRECTV also discouraged Plaintiffs from reporting all of their working hours (in particular, hours spent on nonproductive tasks) by telling Plaintiffs they would not receive additional work orders if they reported significant amounts of overtime.

22. DIRECTV was, or should have been, aware that Plaintiffs' supervisors frequently required or encouraged Plaintiffs to inaccurately record their hours. DIRECTV is in frequent communication with Plaintiffs during the typical work day.

Plaintiffs often call their supervisors several times per day to troubleshoot problems and coordinate work orders. Furthermore, DIRECTV policy requires Plaintiffs to contact DIRECTV directly, either through their electronic handheld device or via phone, at least three times for each work order they complete during the course of a day.

23. DIRECTV keeps a work schedule for each Plaintiff that almost always exceeded 40 hours per week. Additionally, DIRECTV's SIEBEL system keeps detailed time records of when Plaintiffs put themselves on site at a job, when they activate a job, and when they close a job. And DIRECTV uses its SIEBEL data to track when technicians get to their first assignment of the day and when they close their last work order of the day.

24. DIRECTV uses its SIEBEL data to monitor how much work DIRECTV is assigning to each technician based on the "assigned durations" of technicians' work orders. These assigned durations are DIRECTV's time estimates of how long a given work order should take based on the various time-and-motion studies that DIRECTV has commissioned over the years.

**DIRECTV's Policies and Practices Violate the FLSA**

25. DIRECTV's piece-rate pay system failed to comply with applicable law, and constitutes an effort to deliberately deny Plaintiffs earned wages and overtime compensation in violation of the FLSA. Plaintiffs were not paid for all of the overtime hours they worked, and the overtime hours that they were paid for were calculated using an improperly low regular rate in violation of the overtime provisions of the FLSA.

# PLAINTIFFS' CLAIMS

**Plaintiff Julienne Mertens**

26. Plaintiff Julienne Mertens currently resides in Castle Rock, Washington. Ms. Mertens installed and serviced DIRECTV satellite systems in Washington from approximately January 2007 to February 2013. Ms. Mertens filed a consent to join the *Arnold* litigation on March 7, 2013. Ms. Mertens served as the DIRECTV Home Services subclass representative in the *Arnold* action.

27. In many of the weeks Ms. Mertens worked for DIRECTV the total hours worked for the week exceeded 40, often as many as 60 hours per week. But Ms. Mertens was not paid for all her working time. Ms. Mertens estimates that in a typical week she spent as many as 20 to 30 hours on work tasks that were not paid.

**Plaintiff Michael Henderson**

28. Plaintiff Michael Henderson currently resides in Nine Mile Falls, Washington. Mr. Henderson installed and serviced DIRECTV satellite systems in Washington from approximately May 2009 to the present. Mr. Henderson filed a consent to join the *Arnold* litigation on March 7, 2013.

29. In many of the weeks Mr. Henderson worked for DIRECTV the total hours worked for the week exceeded 40, typically 55 hours per week. But Mr. Henderson was not paid for all his working time. Mr. Henderson estimates that in a typical week he spent approximately 5 to 10 hours on work tasks that were not paid.

**Plaintiff Casey Maltos**

30. Plaintiff Casey Maltos currently resides in Spokane Valley, Washington. Mr. Maltos installed and serviced DIRECTV satellite systems in Washington from

approximately September 2009 to the present. Mr. Maltos filed a consent to join the *Arnold* litigation on March 18, 2013.

31. In many of the weeks Mr. Maltos worked for DIRECTV the total hours worked for the week exceeded 40, typically 40 to 50 hours per week. But Mr. Maltos was not paid for all his working time. Mr. Maltos estimates that in a typical week he spent approximately 5 to 10 hours on work tasks that were not paid.

**Plaintiff Robert Davis**

32. Plaintiff Robert Davis currently resides in Cottonwood, California. Mr. Davis installed and serviced DIRECTV satellite systems in California from approximately February 2009 to the present. Mr. Davis filed a consent to join the Arnold litigation on February 27, 2013.

33. In many of the weeks Mr. Davis worked for DIRECTV the total hours worked for the week exceeded 40, often as many as 65 to 75 hours per week. But Mr. Davis was not paid for all his working time. Mr. Davis estimates that in a typical week he spent as many as 25 to 35 hours on work tasks that were not paid.

**Plaintiff Cole Snider**

34. Plaintiff Cole Snider currently resides in Anderson, California. Mr. Snider installed and serviced DIRECTV satellite systems in California from approximately July 2010 to the present. Mr. Snider filed a consent to join the *Arnold* litigation on March 1, 2013.

35. In many of the weeks Mr. Snider worked for DIRECTV the total hours worked for the week exceeded 40, typically 40 to 50 hours per week. But Mr. Snider was not paid for all his working time. Mr. Snider estimates that in a typical week he spent approximately 10 to 15 hours on work tasks that were not paid.

**Plaintiff Terry Teague**

36.  Plaintiff Terry Teague currently resides in Redding, California. Mr. Teague installed and serviced DIRECTV satellite systems in Washington from approximately July 2009 to December 2015. Mr. Teague filed a consent to join the *Arnold* litigation on February 1, 2013.

37.  In many of the weeks Mr. Teague worked for DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Teague was not paid for all his working time. Mr. Teague estimates that in a typical week he spent as many as 30 hours on work tasks that were not paid.

**Plaintiff Martin Gomez**

38.  Plaintiff Martin Gomez currently resides in Santa Rosa, California. Mr. Gomez installed and serviced DIRECTV satellite systems in California from approximately July 2010 to December 2015. Mr. Gomez filed a consent to join the *Arnold* litigation on March 12, 2013.

39.  In many of the weeks Mr. Gomez worked for DIRECTV the total hours worked for the week exceeded 40, typically 45 hours per week. But Mr. Gomez was not paid for all his working time. Mr. Gomez estimates that in a typical week he spent approximately 5 to 10 hours on work tasks that were not paid.

**Plaintiff John Milleman**

40.  Plaintiff John Milleman currently resides in Santa Rosa, California. Mr. Milleman installed and serviced DIRECTV satellite systems in California from approximately 2008 to the present. Mr. Milleman filed a consent to join the *Arnold* litigation on March 7, 2013.

41. In many of the weeks Mr. Milleman worked for DIRECTV the total hours worked for the week exceeded 40, typically 45 hours per week. But Mr. Milleman was not paid for all his working time. Mr. Milleman estimates that in a typical week he spent approximately 5 to 10 hours on work tasks that were not paid.

**Plaintiff William Urich**

42. Plaintiff William Urich currently resides in San Luis Obispo, California. Mr. Urich installed and serviced DIRECTV satellite systems in California from approximately May 2009 to September 2011. Mr. Urich filed a consent to join the *Arnold* litigation on February 5, 2013.

43. In many of the weeks Mr. Urich worked for DIRECTV the total hours worked for the week exceeded 40, typically 45 hours per week. But Mr. Urich was not paid for all his working time. Mr. Urich estimates that in a typical week he spent approximately 5 to 10 hours on work tasks that were not paid.

**Plaintiff Paul Valencia**

44. Plaintiff Paul Valencia currently resides in Santa Maria, California. Mr. Valencia installed and serviced DIRECTV satellite systems in California from approximately 2006 to November 2011. Mr. Valencia filed a consent to join the *Arnold* litigation on February 5, 2013.

45. In many of the weeks Mr. Valencia worked for DIRECTV the total hours worked for the week exceeded 40, typically 55 hours per week. But Mr. Valencia was not paid for all his working time. Mr. Valencia estimates that in a typical week he spent approximately 15 hours on work tasks that were not paid.

**Plaintiff Chris Stanfill**

46. Plaintiff Chris Stanfill currently resides in Oroville, California. Mr. Stanfill installed and serviced DIRECTV satellite systems in California from approximately July 2008 to April 2013. Mr. Stanfill filed a consent to join the *Arnold* litigation on March 25, 2013.

47. In many of the weeks Mr. Stanfill worked for DIRECTV the total hours worked for the week exceeded 40, typically 45 hours per week. But Mr. Stanfill was not paid for all his working time. Mr. Stanfill estimates that in a typical week he spent approximately 10 hours on work tasks that were not paid.

**Plaintiff Zackery Lange**

48. Plaintiff Zackery Lange currently resides in Susanville, California. Mr. Lange installed and serviced DIRECTV satellite systems in California from approximately February 2007 to the present. Mr. Lange filed a consent to join the *Arnold* litigation on March 21, 2013.

49. In many of the weeks Mr. Lange worked for DIRECTV the total hours worked for the week exceeded 40, typically 40 to 50 hours per week. But Mr. Lange was not paid for all his working time. Mr. Lange estimates that in a typical week he spent approximately 10 to 15 hours on work tasks that were not paid

**Plaintiff Dale Martinez**

50. Plaintiff Dale Martinez currently resides in Redding, California. Mr. Martinez installed and serviced DIRECTV satellite systems in California from approximately March 2009 to the present. Mr. Martinez filed a consent to join the *Arnold* litigation on February 27, 2013.

51.     In many of the weeks Mr. Martinez worked for DIRECTV the total hours worked for the week exceeded 40, typically 52 hours per week. But Mr. Martinez was not paid for all his working time. Mr. Martinez estimates that in a typical week he spent approximately 12 hours on work tasks that were not paid.

**Plaintiff Kelvin Forster**

52.     Plaintiff Kelvin Forster currently resides in McMinnville, Oregon. Mr. Forster installed and serviced DIRECTV satellite systems in Oregon from approximately January 2005 to March 2016. Mr. Forster filed a consent to join the Arnold litigation on March 1, 2013.

53.     In many of the weeks Mr. Forster worked for DIRECTV the total hours worked for the week exceeded 40, typically 45 to 60 hours per week. But Mr. Forster was not paid for all his working time. Mr. Forster estimates that in a typical week he spent approximately 5 to 20 hours on work tasks that were not paid.

**Plaintiff Jonathan Spencer**

54.     Plaintiff Jonathan Spencer currently resides in Myrtle Creek, Oregon. Mr. Spencer installed and serviced DIRECTV satellite systems in Oregon from approximately September 2004 to May 2013, although his piece-rate pay ended in approximately November 2011. Mr. Spencer filed a consent to join the *Arnold* litigation on February 27, 2013.

55.     In many of the weeks Mr. Spencer worked for DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 70 hours per week. But Mr. Spencer was not paid for all his working time. Mr. Spencer estimates that in a typical week he spent as many as 20 to 30 hours on work tasks that were not paid.

**Plaintiff Randel Phillips**

56. Plaintiff Randel Phillips currently resides in Oakland, Oregon. Mr. Phillips installed and serviced DIRECTV satellite systems in Oregon from approximately July 2005 to January 2014. Mr. Phillips filed a consent to join the *Arnold* litigation on February 25, 2013.

57. In many of the weeks Mr. Phillips worked for DIRECTV the total hours worked for the week exceeded 40, typically 50 hours per week. But Mr. Phillips was not paid for all his working time. Mr. Phillips estimates that in a typical week he spent approximately 10 hours on work tasks that were not paid.

**Plaintiff Vincent Torrie**

58. Plaintiff Vincent Torrie currently resides in Aurora, Colorado. Mr. Torrie installed and serviced DIRECTV satellite systems in Colorado from approximately July 2006 to September 2010. Mr. Torrie filed a consent to join the Arnold litigation on February 27, 2013.

59. In many of the weeks Mr. Torrie worked for DIRECTV the total hours worked for the week exceeded 40, as much as 70 hours per week. But Mr. Torrie was not paid for all his working time. Mr. Torrie estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

**Plaintiff Doug Bridgeforth**

60. Plaintiff Doug Bridgeforth currently resides in Denver, Colorado. Mr. Bridgeforth installed and serviced DIRECTV satellite systems in Colorado from approximately June 2008 to June 2010. Mr. Bridgeforth filed a consent to join the *Arnold* litigation on January 21, 2013.

61. In many of the weeks Mr. Bridgeforth worked for DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 70 hours per week. But

Mr. Bridgeforth was not paid for all his working time. Mr. Bridgeforth estimates that in a typical week he spent as many as 20 to 30 hours on work tasks that were not paid.

## COUNT I

## Violation of the Fair Labor Standards Act of 1938

62. Plaintiffs re-allege all allegations set forth above.

63. At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

64. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

65. DIRECTV is subject to the requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce. DIRECTV grosses more than Five Hundred Thousand Dollars in revenue per year.

66. DIRECTV violated the FLSA by failing to pay all wages, including overtime wages, due to Plaintiffs.

67. DIRECTV violated the FLSA by failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed.

68. Plaintiffs are entitled to damages equal to their unpaid wages and overtime premium pay within the three years preceding the filing their consent to join forms in the *Arnold* litigation, plus applicable periods of tolling, because DIRECTV acted willfully and knew or showed reckless disregard in their violation of the FLSA.

69. DIRECTV has neither acted in good faith, nor with reasonable grounds to believe that its actions and omissions complied with the FLSA. As a result, Plaintiffs

are each entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).

70. If the Court finds that DIRECTV acted in good faith in failing to pay Plaintiffs overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and:

a. Award damages for unpaid wages under 29 U.S.C. § 216(b);

b. Award liquidated damages under 29 U.S.C. § 216(b) or, in the alternative, prejudgment interest;

c. Award reasonable attorneys' fees and costs under 29 U.S.C. § 216(b); and

d. Grant any further relief that the Court may deem just and equitable.

Dated: July 28, 2017

Respectfully submitted,

**STUEVE SIEGEL & HANSON LLP**

By */s/ J. Toji Calabro*
J. Toji Calabro, CA Bar No. 239950
George A. Hanson, *pro hac vice forthcoming*
Crystal R. Cook, *pro hac vice forthcoming*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile: 816-714-7101
Email: calabro@stuevesiegel.com

Jason Hartley, CA Bar No. 192514
500 West C Street, Suite 1750
San Diego, California 92101
Telephone: 619-400-5822
Facsimile: 619-400-5832
Email: hartley@stuevesiegel.com

**LEAR WERTS LLP**
Bradford B. Lear, *pro hac vice forthcoming*
Todd C. Werts, *pro hac vice forthcoming*
2003 W. Broadway, Ste. 107
Columbia, Missouri 65203
Telephone: 573-875-1991
Facsimile: 573-875-1985
Email: lear@learwerts.com
Email: werts@learwerts.com

**ATTORNEYS FOR PLAINTIFFS**

17
COMPLAINT FOR DAMAGES